## James B. Hogue
### v.
## William Edwards et al.

BANK CHECK.—One Neil engaged in the purchase of stock to be shipped to market, kept a banking account with appellant, a banker, with whom he arranged for credit to enable him to carry on h's business. Neil being indebted to appellees for hogs purchased of them, drew his check for the amount and deposited it with appellant, and received an exchange draft on a Chicago bank, for the purpose of sending to appellees, but which was never sent. In a suit by appellees against appellant, based upon the check drawn by Neil, *held*, that there was no privity between appellees and appellant, and no such setting apart of the funds of the drawer of the check for the benefit of appellees, as would make the banker liable.

ERROR to the Circuit Court of Peoria county; the Hon. JOHN BURNS, Judge, presiding. Opinion upon petition for re-hearing filed December 15, 1881. For original opinion, see *ante,* page 148.

Thomas Neil bought of the defendants in error a lot of hogs, for the sum of $5,339.67, and by agreement with them, was to send $2,000 of the amount to certain parties in Chicago and Iowa, designated by them, and the balance, $3,339.67, was to be sent to them at Centreville Iowa, by draft on Chicago. Neil at this time had an account at the bank of the plaintiff in error, which, however, was largely overdrawn. He made an arrangement with Hogue to give him further credit, promising to provide for the Chicago exchange by time it should be presented. Neil thus signed and presented his checks for the several amounts that under his agreement for payment, he was to transmit to the persons entitled thereto, which checks were honored by Hogue, and the amounts charged to Neil. The $2,000 were paid as desired by Edwards Bros., and are not involved in this litigation.

The check drawn by Neil for the amount going to Edwards Bros. was as follows:

"No. 1600. PEORIA, Ill., December 3d, 1879.
" J. B. HOGUE & Co., Bankers:
" Pay to Edwards Bros., Chicago exchange, thirty-three hun-

" dred and thirth-nine and sixty-seven one-hundredth dollars.
    "$3,339.67.    ·    THOMAS NEIL."

A draft was issued by the bank drawn upon, the Union National Bank, Chicago, and made payable to Edwards Bros., but was never received by them. Neil afterwards absconded without providing for the payment of this check. This suit was brought by Edwards Bros., to recover the amount of Hogue, and on the trial they elected to rely upon the check of Neil as a basis of recovery. A verdict and judgment were entered in their favor, and Hogue sued out the writ of error.

Messrs. JAMES, JACK and MOORE, for the petition, argued that the check left by Neil with plaintiff in error, was intended for the use of defendants in error, and that its effect was to transfer so much of the funds of the drawer in the hands of the banker, as the amount specified in the check, and cited Brown v. Pierce, 80 Ill. 214; C. M. & F. Ins. Co. v. Stanford, 28 Ill. 168; Bickford v. First Nat. Bank; 42 Ill. 239; Brown v. Leckir, 43 Ill. 497; Seventh Nat. Bank v. Cook, 73 Pa. St. 485.

The banker is bound to withhold enough of the depositor's funds to pay the check: F. & M. Bank v. Butchers and Drovers Bank, 16 N. Y. 125.

The banker having received the check in question, and charged the amount against the depositor in his account, he cannot now be heard to say that the depositor had no funds in his hands to apply on the check: 1 Daniel's Neg. Inst. 373; Girard Bank v. Bank Penn. Tp. 39 Pa. St. 92; Commercial Bank v. Hughes, 17 Wend. 94; Dykers v. L. M. Bank, 11 Paige, 612; Fourth Nat. Bank v. City Nat. Bank, 68 Ill. 398.

Mr. LAWRENCE HARMAN, opposing the petition, argued that a check should be payable in money only, citing 2 Parsons on Bills and Notes, 58; Little v. Phoenix Bank, 2 Hill, 425.

And a check calling for payment in current rate of exchange is not negotiable: Lowe v. Bliss, 24 Ill. 169.

Neither endorsement nor acceptance of a bill are complete before delivery: Cox v. Troy, 5 B. & Ald. 474; Chapman v. Cotteral, 34 L. J. Exch. 186; Byles on Bill, *150; First Nat. Bank v. Strang, 72 Ill. 559.

Hogue v. Edwards.

PER CURIAM.   In the petition for a re-hearing it is assumed that the check left by Neil with the plaintiff in error, was intended by them to be placed there for the benefit of defendants in error, absolutely and without reservation.   That the money represented by the check being the money for the defendants in error, in the hands of the plaintiff in error, they could sue for and recover the same unless plaintiff in error can show he paid the draft which had been delivered by Neil.

The fallacy of this position consists in the erroneous assumption that the money represented by the check and for which the Chicago draft was drawn, was deposited for the benefit of defendants in error.   The real transaction was not as supposed. Neil did not intend to make a deposit of check or money with plaintiff in error for the defendant's in error benefit, but intended to keep the matter under his control until he should pay the amount, if he ever did, to defendants in error.   Nor did the plaintiff in error suppose that he was becoming the mere custodian of this amount of money for them.   The drawing of the check by Neil, and issuing of the draft by plaintiff in error and its delivery to the former by him, was all one and the same transaction, and only indicated that Neil was taking certain preliminaiy steps preparatory to paying defendants in error by sending them the Chicago draft.   The transaction was wholly between them, in which defendants in error had no part or privity.   Neil was not the latter's agent, and after he took the check at any time prior to its actual delivery to them, could change his mind and refuse to send it, and re-deliver it to the plaintiff in error from whom he obtained it, and in fact he had promised the appellant to take care of its payment.

If Neil found he was unable to take care of its payment, good faith required that he either should return it or not send it.   Plaintiff in error was simply lending him his credit.   If Neil changed his mind he might return it to the former and demand the cancellation of the temporary charge made for it on the bank books.

The plaintiff in error had opened no account with the defendants in error on account of this money or check, and did not know them in the transaction, further than it was the intention of Neil to send the draft.

When Neil failed to send the draft, it was manifestly his intention not to pay the defendants in error. It is true he did not return the draft, and for the reason that the draft was never delivered; it was in law never executed, and was a nullity. The book account between Neil and the plaintiff in error was then subject to readjustment, and the charge for the draft should have been cancelled. The mere fact that the defendants in error were named in the check upon which the draft was drawn, could make no difference. It amounted to no more than if Neil had drawn his check for so much money, and had taken the draft instead, which according to the custom of banking is often done.

A check is drawn for money and a draft taken payable to a third party, and if the draft is used upon posting up the customer's account the check is returned to him cancelled. It is merely the means of keeping the account between the customer and the bank. If the draft is not used by the customer he has the undoubted right to have a credit for the amount charged over against the original amount charged for the draft or check. We cannot think that on any principle of justice or law the debtor of the bank's customer could be allowed to hold the bank responsible to pay him the amount represented by such draft in case the draft was not sent to the payee.

There is no privity of contract, either express or implied, between such bank and the creditor of the bank's customer. If this action can be maintained, it must be on the ground that it was the absolute intention of Neil to leave this money on deposit with plaintiff in error for defendants in error, and of plaintiffs in error's acceptance of it for that purpose.

But as it was not the intention of these parties, and Neil being largely indebted to plaintiff in error on book account, over and above the sum in question, it would be in no wise be equitable to compel him to pay defendants in error this large sum, and force him to lose his own claim to that amount. It could not even be done on garnishee process. This is said with reference to the case as prevented by the record, under election made in open court by defendants in error to rely on the check as a basis of recovery. We still adhere to the views

we expressed in our former opinion, that no recovery can be supported on such ground.

· The instructions given by the court in behalf of defendants in error, and based upon the right of recovery upon this check, were erroneous and should not have. been given.

Whether defendants in error can recover on any other grounds does not properly arise upon this record.   We therefore overrule the petition for a re-hearing, and refuse to amend or change our former judgment.

Re-hearing denied.